UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**JOHNETTA CARR**                                                                        **PLAINTIFF**

vs.                                          CIVIL ACTION NO. 3:20-CV-818-CRS

**LOUISVILLE-JEFFERSON COUNTY**
**METROPOLITAN GOVERNMENT, et al.**                          **DEFENDANTS**

## MEMORANDUM OPINION

This matter is before the Court on the motion of Defendants, Louisville-Jefferson County Metro Government, City of Louisville, Tony Finch, Gary Huffman, Jim Lawson, Shawn Seabolt, Troy Pitcock, and James Hellinger, to dismiss. DN 20, 20-1. Plaintiff, Johnetta Carr ("Carr"), responded in opposition to the motion. DN 21. Defendants then filed a reply. DN 22. The matter is now ripe for review.

For the reasons stated herein, Defendants' motion to dismiss will be granted.

## I. BACKGROUND

Carr was arrested for the murder of Planes Adolphe in January 2006 and subsequently indicted for murder, burglary, robbery, and tampering with physical evidence. DN 1 at 2, 22-23. She eventually took an *Alford* plea[1] to second degree manslaughter, conspiracy to commit robbery, conspiracy to commit burglary, and tampering with physical evidence because "the false and fabricated evidence against her seemed insurmountable." DN 1 at 2, 23.

---

[1] "The so-called '*Alford* plea' is . . . a guilty plea entered by a defendant who either: 1) maintains that he is innocent; or 2) without maintaining his innocence, 'is unwilling or unable to admit' that he committed 'acts constituting the crime.'" *United States v. Tunning*, 69 F.3d 107, 110 (6th Cir. 1995) (quoting *North Carolina v. Alford,* 400 U.S. 25, 37 (1970)). "Although such a plea is not an admission of involvement in criminal behavior, it is nevertheless a guilty plea that results from the defendant's recognition that 'the record before the judge contains strong evidence of actual guilt.'" *United Specialty Ins. Co. v. Cole's Place, Inc*., 936 F.3d 386, 406 (6th Cir. 2019) (quoting *North Carolina v. Alford,* 400 U.S. 25, 37 (1970)).

On December 6, 2019, Carr applied for a gubernatorial pardon.[2] DN 1 at 34, 22-2 at 2-9. Her application explains, in part, that:

> I took a plea bargain in this case because I was facing the death penalty and I was scared. However, I took an "Alford" plea because I still maintained my innocence. I was just willing to take 20 years in prison rather than risk being executed for a crime I didn't do.
>
> I was paroled in 2009 and I have been successful ever since. I was released from parole on June 14, 2018. Still, my record makes life difficult for me, and I hate having to explain to people that I was convicted of this crime that I didn't do. It's awful for people to think that you killed your boyfriend when you did not.
>
> The Kentucky Innocence Project has uncovered some new evidence in their investigation, but I don't know if it will be enough to overturn my conviction. The jailhouse snitch has now recanted and said that the police put her up to lying and saying that I confessed. My co-defendant Carla has also contacted me and said that she only said I was involved because she was interrogated by the police for thirteen hours.
>
> I humbly ask that you give me some justice in my case by granting me a full pardon.

DN 20-2 at 6. Carr also offered several letters from the Kentucky Innocence Project and the Department of Public Advocacy in support of her request. DN 20-2 at 7-9. Each letter addresses the lack of physical evidence in her case, her exemplary behavior and work ethic since she was granted parole, the societal difficulties she encounters because of her conviction, and the belief that she is innocent. DN 20-2 at 7-9.

Former Kentucky Governor Matthew Bevin pardoned Carr three days after her application was filed. DN 1 at 34, 20-2 at 1. The pardon states that:

---

[2] Although Carr's application for a gubernatorial pardon and official pardon are not attached to her Complaint, the Court may properly consider such documents because they are public records and are otherwise appropriate for taking judicial notice. *New England Health Care Emps. Pension Fund v. Ernst & Young*, LLP, 336 F.3d 495, 501 (6th Cir. 2003). Further, the Court need not convert Defendants' motion to dismiss into one for summary judgment considering that the aforementioned documents are fundamental to Carr's Complaint. *See Commercial Money Ctr., Inc. v. Ill. Union Ins. Co*., 508 F.3d 327, 335–36 (6th Cir. 2007) ("when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment").

> WHEREAS, Johnetta Carr . . . was convicted in Jefferson County Circuit Court in 2008 of manslaughter, conspiracy to robbery, conspiracy to burglary and tampering with physical evidence; and
>
> WHEREAS, Johnetta Carr is a strong and highly motivated woman with a very bright future. I am confident that she will contribute in powerful ways to society as a whole and to those in her community specifically. God clearly has His hand on her; and
>
> WHEREAS, it is my privilege to grant her the full and unconditional pardon she has requested;
>
> NOW, THEREFORE, I, Matthew G. Bevin, Governor of the Commonwealth of Kentucky, in consideration of the foregoing, . . . do hereby unconditionally pardon Johnetta Carr and return to her all rights and privileges of a citizen of this Commonwealth.

DN 20-2 at 1.

Carr filed this lawsuit on December 8, 2020, alleging that Defendants are liable for various claims arising under federal and state law because she "spent more than 12 years imprisoned and on parole for a crime she did not commit."[3] DN 1 at 3. Defendants contend that Carr's allegations are untenable in light of the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).

## II. **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, [that] 'states a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The pleading standard outlined in Rule 8 does not require a complaint to contain "detailed factual

---

[3] Carr voluntarily dismissed her state law intentional infliction of emotional distress claim and her state law *respondeat superior* claim in footnote one of her Response. DN 21 at 2.

3

allegations, but it demands more than an unadorned, the-defendant unlawfully harmed me accusation." *Id*. As such, "a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*.

In undertaking this inquiry, the Court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

### III. ANALYSIS

#### A. Federal Law Claims

42 U.S.C. § 1983 establishes tort liability for the deprivation of federal rights by persons acting under color of state law. However, § 1983 claims are not cognizable where a judgment in favor of the plaintiff would necessarily imply invalidity of the plaintiff's state conviction or sentence. *See Harper v. Jackson*, 293 F. App'x 389, 391 (6th Cir. 2008) (quoting *Heck*, 512 U.S. at 486) ("The *Heck* bar exists because the Court's respect for 'finality and consistency' precludes a prisoner's use of § 1983 to collaterally attack an outstanding conviction"). Therefore, a plaintiff "must prove that [their] conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus" to avoid dismissal. *Heck,* 512 U.S. at 486–87; *see also Reid v. Osborn*, No. 2:11-CV-283, 2012 WL 3611907, at *9 (E.D. Tenn. Aug. 21, 2012) ("the law is settled that, if a judgment in favor of a plaintiff would

necessarily imply the invalidity of his state court conviction or sentence, his § 1983 complaint must be dismissed, unless he can demonstrate that the conviction or sentence has already been invalidated").

Carr asserts that her conviction was expunged by executive order by virtue of her gubernatorial pardon. DN 1 at 34, 21 at 7-13. The Defendants disagree. DN 20-1 3-6, 22 at 1-6. To resolve this conundrum, we must look to federal law to determine whether Carr's pardon invalidated her conviction within the meaning of *Heck. See Wilson v. Lawrence Cty., Mo*., 154 F.3d 757, 760 (8th Cir. 1998).

Neither *Heck* nor subsequent cases decided by the United States Supreme Court concerning *Heck*'s holding explicitly list a pardon among the ways that a state conviction can be invalidated. Similarly, courts within the Sixth Circuit have yet to speak on whether a pardon invalidates a plaintiff's conviction or sentence. Given the absence of controlling authority, Carr contends that this Court should rely upon three non-binding federal court decisions, which addressed similar issues to the ones presented here, to find that her pardon invalidated her conviction by some means independent of the instant proceeding. DN 21 at 7-13.

In the early 1990s, former Virginia Governor L. Douglas Wilder granted Walter Snyder an absolute pardon, "explaining that, while he found no fault with the prosecution or the jury's verdict as rendered on the evidence available at the time, the DNA test results place a cloud upon the verdict and raise a doubt concerning the ultimate issue of whether [] Snyder is guilty of the crime for which he was convicted." *Snyder v. City of Alexandria*, 870 F. Supp. 672, 677 (E.D. Va. 1994). Snyder subsequently filed an action against the City of Alexandria and several police officers alleging constitutional tort claims and state common law claims. *Id.* at 678. The defendants moved for dismissal, arguing that Snyder's claims were barred by the statute of limitations. *Id*. After

finding that Snyder's state law malicious prosecution claim was properly asserted because the pardon's terms and circumstances "substantially impugns or discredits [his] conviction," the court determined that Snyder's § 1983 claims were also timely considering that his federal claims did not accrue until his conviction was invalidated by the issuance of a pardon that discredited a finding of judicial guilt. *Id*. at 680-81, 685. In support of this conclusion, the court pronounced, without any additional substantive explanation, that "[j]ust as certain pardons or expungement orders can favorably terminate a criminal prosecution, so, too, can they invalidate a conviction for § 1983 purposes, as *Heck* requires." *Id*. at 686.

A few years after *Snyder* was decided, the Eight Circuit examined a Missouri district court's ruling that a gubernatorial pardon did not qualify as an "expungement by executive order" or otherwise satisfy *Heck's* invalidation requirement. *Wilson v. Lawrence Cty., Mo.*, 154 F.3d 757 (8th Cir. 1998). In evaluating the district court's decision, the Eight Circuit examined the meaning of the word "expunge" and determined that the United States Supreme Court intended to convey a figurative connotation based on the word's "more common meaning . . . : '[t]o destroy; blot out; obliterate; erase; efface designedly; strike out wholly.'" *Id*. at 760 (quoting Black's Law Dictionary 582 (6th ed.1990)). Based on this interpretation, the court concluded that:

> Wilson's pardon did "expunge" his conviction "by executive order." Governor Carnahan, acting within his authority under the Missouri Constitution, [] issued Wilson a full pardon, stating, "it is clear [Wilson] did not commit the crime for which he has been incarcerated." The pardon states on its face that it "obliterates said conviction." Wilson's pardon is therefore an "executive order" that "expunged," "obliterated," and "invalidated" his conviction. *Heck* requires nothing more.

Id. at 761.

Here, Carr's pardon does not contain similar language that has been found by the United States District Court for the Eastern District of Virginia or the United States Court of Appeals for

the Eight Circuit to satisfy *Heck*. Unlike *Snyder* and *Wilson*, which relied upon gubernatorial pardons that addressed a plaintiff's actual innocence in varying terms to explain its holding, Carr's pardon simply returns "all rights and privileges of a citizen of [the Commonwealth of Kentucky]." DN 20-2 at 1. Although Carr's pardon application and the letters attached thereto assert that she is innocent, the pardon issued by former Governor Bevin is devoid of any explicit or implicit references to her innocence and Kentucky law does not suggest that the pardon's language indicates a finding of innocence, the expungement of her criminal record, or an intent to obliterate her conviction. *See e.g., Harscher v. Com.*, 327 S.W.3d 519, 520-22 (Ky. Ct. App. 2010) (finding that a pardon issued by former Kentucky Governor Ernie Fletcher, which stated "I . . . do hereby unconditionally pardon Frank Harscher III and return to him all rights and privileges of a citizen of this Commonwealth," did not "wipe out either guilt or the fact of the conviction" and did "not entitle an individual to the expungement of his criminal record"); *Fletcher v. Graham*, 192 S.W.3d 350, 362-63 (Ky. 2006) (internal citation and quotation marks omitted) ("A pardon does not prevent any and all consequences of the pardoned offense: collateral consequences of the offense may still follow. For example, an attorney who has been pardoned for the offense of forgery may not be punished for that crime, but may be disbarred as a result of that offense. Our predecessor court also recognized that a gubernatorial pardon does not restore the character of the witness/pardonee, so that he or she could still be impeached as a felon. Thus, while a pardon will foreclose punishment of the offense itself, it does not erase the fact that the offense occurred, and that fact may later be used to the pardonee's detriment").

Further, Carr's reliance on *Savory v. Cannon*, 947 F.3d 409 (7th Cir.), cert. denied, 141 S. Ct. 251, 208 L. Ed. 2d 24 (2020) is inapposite. Johnnie Savory was convicted of murder and eventually pardoned by former Illinois Governor Pat Quinn. *Id.* at 412. Savory's pardon (1)

"declared that [he] was acquitted and discharged of and from all further imprisonment, (2) "restored [] all the rights of citizenship which [were] forfeited by [his] conviction," and (3) included "an Order Permitting Expungement Under The Provisions Of 20 ILCS 2630/5.2(e)." *Id*. Less than two years after being pardoned, Savory asserted several claims under § 1983 against various defendants. *Id*. at 412-13. The United States District Court for the Northern District of Illinois dismissed the action after finding that Snyder failed to file his cause of action within the applicable statute of limitations. *Id*. at 413. On appeal, the Seventh Circuit reversed. *Id*. at 413-19. The court, sitting en banc, concluded that Savory's lawsuit was timely based on the accrual principles articulated by the United States Supreme Court in *Heck* and *McDonough v. Smith*, 139 S. Ct. 2149 (2019), as well as Seventh Circuit precedent that explicitly permits plaintiffs to pursue civil claims under § 1983 following the issuance of a gubernatorial pardon. *Id*.

Here, the parties do not dispute the accrual date for Carr's claims. Instead, the issue before this Court concerns whether Carr's pardon invalidated her conviction in such a manner that permits her to presently assert claims under § 1983 against Defendants. Unlike the Seventh Circuit, which has routinely determined that a pardon or executive pardon are synonyms with the phrase "expunged by executive order," the Sixth Circuit has not announced such a rule and we decline to find that the mere issuance of a pardon, without language that questions or discredits a judicial finding of guilt, appropriately invalidates a criminal conviction for purposes of *Heck*. Accordingly, Carr may not assert any of her federal claims because they are dependent upon an ability to assert a cognizable cause of action.

### B. State Law Claims

What remains against Defendants after dismissal of Carr's § 1983 claims, are two state law tort actions: Count VIII - malicious prosecution and Count IX - negligent supervision. DN 1 at 43-

45. A district court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Nevertheless, a court may decline to exercise supplemental jurisdiction over a claim if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Considering that Carr's federal law claims have been dismissed at this early stage of the litigation, the Court declines to exercise supplemental jurisdiction over her remaining state law claims. *See Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996), amended on denial of reh'g, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed"). Accordingly, Carr's state law claims will be dismissed.

## IV. CONCLUSION

For the reasons discussed herein, Defendants' motion to dismiss will be granted by separate order.

July 22, 2021

*[signature]*

Charles R. Simpson III, Senior Judge
United States District Court

9