UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:20-CV-00818-CRS

JOHNETTA CARR                                                                                    PLAINTIFF

v.

LOUISVILLE JEFFERSON COUNTY                                                          DEFENDANTS
   METRO GOVERNMENT, *et al*

## MEMORANDUM OPINION AND ORDER

Plaintiff Johnnetta Carr ("Carr") has brought this action pursuant to 43 U.S.C. § 1983. She alleges that Defendants violated her constitutional rights by fabricating evidence, coercing false statements and withholding exculpatory evidence in connection with Carr's state-law indictment for the murder of Planes Michael Adolphe ("Adolphe"). This matter is now before the Court on a Motion for a Judgment on the Pleadings (the "Motion") filed by three Defendants: Sergeant James Hellinger, Sergeant Troy Pitcock and Detective Shawn Seabolt (hereafter the "Defendants"). Defendants contend that the Complaint fails to state a claim upon which relief can be granted because it does not contain sufficient fact allegations. Carr opposes the Motion but also asks for leave to amend should the Court disagree with her. For the reasons set forth below, the Court will dismiss the claims against Defendants and deny Carr's request to amend, both without prejudice.

## BACKGROUND

Officers employed with the Louisville Metro Police Department and its predecessor the Louisville Police Department (together the "LMPD") investigated Adolphe's murder, beginning in 2005. In her Complaint, Carr alleges that defendant Tony Finch coerced jailhouse informants and others to falsely accuse Carr, ignored exculpatory evidence, and decided to pin the crime on Carr when he could not "break" the man who should have been indicted, Steven Louis ("Louis").

Carr alleges that, ultimately, she "took an *Alford* plea because the false and fabricated evidence against her seemed insurmountable and the Defendant[ ] [Officers] conspired to withhold their egregious misconduct . . . ." Complaint, DN 01, at ¶ 168. Although she was sentenced to 20 years for second degree manslaughter and other charges, Carr spent less than two years in prison before being paroled on December 9, 2009. Parole Application, DN 20-2 at 2. Ten years later, on December 9, 2019, then Kentucky Governor Matt Bevin pardoned Carr. *Id.* at 1.

A year later, on December 8, 2020, Carr filed this lawsuit. She has sued the Louisville County Metro Government, the City of Louisville, 5 detectives and 2 police sergeants. Pursuant to 42 U.S.C. § 1983, Carr seeks compensatory and punitive damages for violations of her constitutional rights based on theories of municipality liability and individual liability. Carr has also pleaded state-law claims for malicious prosecution, negligent supervision, intentional infliction of emotional distress and "respondeat superior." As for Hellinger, Pitcock and Seabolt, Carr has alleged § 1983 claims against them for (1) maliciously prosecuting her, (2) violating her 14th Amendment right to due process, (3) violating her 4th Amendment rights, (4) failing to intervene, and (5) conspiring to deprive her of her constitutional rights. Carr has also sued Hellinger, Pitcock and Seabolt under Kentucky law for malicious prosecution and intentional infliction of emotional distress. Lastly, Carr has sued Pitcock and Hellinger based on theories of supervisory liability, including her state law claim for negligent supervision.

## **ANALYSIS**

Although Defendants have styled their Motion as a Rule 12(c) motion for a judgment on the pleadings, they have asked to be "dismissed" on the ground that the Complaint fails to state a claim upon which relief may be granted. As such, the Motion seeks relief under FED. R. CIV. P. 12(b)(6). The Civil Rules permit Defendants to proceed this way. FED. R. CIV. P. 12(h)(2). However, the applicable standard is the Rule 12(b)(6) standard, not the Rule 12(c) standard.

*Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987). Review under Rule 12(b)(6) requires the Court to "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Further, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (cleaned up) (internal citations omitted). A complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 55 U.S. at 557).

Together, *Iqbal* and *Twombly* require a plaintiff to "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. Finally, with respect to § 1983 claims for damages, the plaintiff "must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)).

Stated another way, "only officers with direct responsibility for the challenged action may be subject to § 1983 liability." *Wilson v. Morgan*, 477 F.3d 326, 337 (6th Cir. 2007). Thus, "'conclusory allegations of officers' collective responsibility'" do not pass muster. *Gordon v. Louisville/Jefferson Cnty. Metro Gv't*, 486 Fed. Appx. 534, 539 (6th Cir. 2012) (quoting *Hessel v. O'Hearn,* 977 F.2d 299, 305 (7th Cir. 1992)). Carr has pleaded in such a collective manner. In each Count of the Complaint, Carr pleads the elements of the claim and attributes them to the

"Defendant Officers." And, while each Count incorporates all preceding paragraphs, none of those paragraphs sets out conduct by either Hellinger, Pitcock or Seabolt that meets the elements of Carr's claims. Instead, the fact allegations of wrongdoing are predominately about Finch.[1]

Carr concedes this point, at least in part. Although she has yet to do so, Carr has agreed to voluntarily dismiss defendant Seabolt. Response, DN 42, at n.1. Next, Carr's Response does not address her § 1983 claims for malicious prosecution (Count I), for due process violations under the 14th Amendment (Count II), or for violations of the 4th/14th Amendments based on alleged evidence fabrication (Count III). Similarly, Carr's Response does not address her state-law claims. Instead, Carr limits her Response to her § 1983 claims for supervisory liability (Count IV), failure to Intervene (Count V) and conspiracy (Count VI) against Hellinger and Pitcock. Carr's efforts to rescue these three claims, however, are unavailing.

**A. Supervisory Liability**

Carr argues that she has stated a supervisory liability claim against Hellinger and Pitcock because she has alleged that they "permitted Defendant Finch to lead on a homicide investigation despite Defendant Finch's own contemporaneous criminal misconduct." Response, DN 42, at 6. Carr also contends that she has pleaded Finch's "history of abuse of power," which supports her claims. *Id.* (citation omitted). Carr argues that the "fact that the Adolphe homicide involved a young teenager made it entirely foreseeable that Defendant Finch would abuse his power in this homicide investigation, resulting in violations of Ms. Carr's constitutional rights." *Id.* (citation omitted). In support, Carr relies on her allegations that "Defendant Finch had a track record of 'official misconduct, abuse of power, and threatening, harassing, and intimidating behavior,' yet he was nonetheless permitted to work as the lead detective on a homicide case involving young

---

[1] Carr has pleaded fact allegations against defendant Jim Lawson. Complaint, DN 01, at ¶¶ 125-35. Nonetheless, the majority of alleged bad acts are Finch's.

teenagers." *Id.* (citation omitted). Carr contends that these allegations state a claim for supervisory liability against Hellinger and Pitcock. The Court disagrees.

To succeed on a supervisory liability claim, Carr must show that each Defendant "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of [Finch]." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *see also Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) ("Plaintiff must show that the supervisors somehow encouraged or condoned the actions of their inferiors."); *Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002) (encouragement satisfies this requirement). This showing "requires some 'active unconstitutional behavior' on the part of the supervisor." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Supervisory liability does not attach for "a mere failure to act." *Id.* at 241. Similarly, a "supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Id.*

Here, Carr argues that Hellinger and Pitcock should be held liable because they allowed Finch to conduct the Adolphe investigation despite Finch's criminal behavior. Response, DN 42, at 6. However, there are no allegations that either Pitcock or Hellinger were aware of any such behavior and essentially all of the alleged criminal conduct postdates the Adolphe investigation.

Carr cites ¶¶ 195-209 of her Complaint in support of her argument. Those paragraphs allege that Finch stalked and harassed his wife and abused his office in connection with that conduct. According to Carr's allegations, with one vaguely stated exception, most of that criminal conduct took place in 2008 and 2009 – years after the Adolphe murder investigation. The investigative events on which Carr relies took place in 2005, 2006 and 2007. The one exception is the allegation that Finch stalked and harassed his wife "between 2005 and 2008." Complaint, DN 01, at ¶ 196.

5

But Carr has not alleged that either Hellinger or Pitcock knew that Finch was stalking and harassing his wife or had reason to suspect that Finch would frame Carr because she was "a young teenager."

Moreover, there is only one allegation about Finch's abuse of his office, *i.e.* about a likelihood that either Hellinger or Pitcock knew Finch was untrustworthy. According to Carr, Finch abused his office "to conduct surveillance and investigation into his former wife, between August and September 2008." Complaint, DN 01, at ¶ 200. The problem remains that this alleged abuse postdates Carr's harm. The Adolphe murder investigation began in October 2005 and Carr took an *Alford* plea "in April 2008," *id.* at ¶ 167, months before Finch allegedly abused his office. Based on Carr's pleading, one cannot reasonably infer that at any point during the Adolphe investigation either Hellinger or Pitcock knew that Finch would abuse his office.

Carr's allegations as to Hellinger's role in the Adolphe investigation likewise fail to rescue her supervisor liability claim. Indeed, Carr does not even allege that Hellinger was Finch's or any other defendant's supervisor. Nor does she allege that Hellinger supervised the Adolphe investigation generally. Instead, Carr alleges nothing more than Hellinger's being employed as either a police officer or sergeant. Complaint, DN 21, at ¶ 21. As for Hellinger's participation in the investigation, Carr alleges that interviewed two witnesses. Those witnesses told Hellinger about where they saw Adolphe's car parked on the night of his murder. *Id.* at ¶ 54. The Complaint is devoid of further factual enhancement as to how this event caused constitutional harm to Carr.

Carr does allege that Hellinger was present while Finch aggressively interrogated her, but she does not allege that Hellinger actively participated in the questioning. *Id.* at ¶ 163. Even if the Court construes this allegation as Hellinger's tacit approval of untoward "aggressive" techniques, that is not enough to state a supervisor-liability claim. There "must be a 'causal connection' between the defendant's 'active unconstitutional behavior' and the plaintiff's injuries." *Crawford*,

6

15 F.4th at 761-62 (citation omitted). As pleaded, Carr's "supervisory liability" claim rests on the following:

> . . . constitutionally [in]adequate law enforcement practices, particularly those which concerned interviews of suspects and the production of exculpatory evidence, thereby encouraging and/or permitting these employees and other defendants . . . to coerce and fabricate false inculpatory evidence and to withhold exculpatory and impeachment evidence, which caused the constitutional deprivations suffered by Plaintiff.

Complaint, DN 01, at ¶ 248. But Finch's interrogation of Carr, witnessed by Hellinger, did not elicit a false statement from her. Instead, despite Finch's aggressive questioning, Carr maintained her innocence throughout this interrogation. *Id.* at ¶ 164. Further, Carr has pleaded that the harm at issue is her *Alford* plea which, in turn, deprived her of a right to a fair trial. *Id.* at ¶ 235. Yet, at the same time, Carr alleges that she took an *Alford* plea not because of Finch's interrogation but because the false evidence Finch coerced or fabricated "seemed insurmountable" and exculpatory evidence was hidden. *Id.* at ¶ 168.

As for Pitcock, Carr has alleged that he was Finch's supervisor, but she has not alleged facts that indicate that Pitcock actively engaged in unconstitutional conduct. Rather, Carr alleges no more than Pitcock's approving surveillance on a third-party Carla Sowers' home. Complaint at ¶ 36, ¶¶ 93-94. These allegations are also devoid of further factual development. Carr cannot rely on the allegations in Count IV either. They are recitations of the elements of supervisory liability. As such, they are legal conclusions couched as factual allegations – rendering them insufficient to survive a motion to dismiss. *Papasan v. Allain* 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). As well, they are pleaded collectively against the "Defendant Officers" and fail to put Hellinger and Pitcock on notice as to the specific unconstitutional conduct with which they are charged here. Thus, Carr's allegations fail to state a claim for this reason too. *Gordon*, 486 Fed. Appx. at 539.

**B. Failure to Intervene**

Officers cannot be liable under a failure-to-intervene theory "if they do not have 'a realistic opportunity to intervene and prevent harm.'" *Wells v. City of Dearborn Heights*, 538 Fed. Appx. 631, 640 (6th Cir. 2013) (quoting *Ontha v. Rutherford Cnty. Tenn.*, 22 Fed. Appx. 498, 507 (6th Cir. 2007)). This standard presupposes a threshold harm. Absent a constitutional harm, there can be no liability. *Bonner-Turner v. City of Ecorse*, 627 Fed. Appx. 400, 413 (6th Cir. 2015) ("because there is no underlying constitutional violation, [officer] may not be liable for failure to intervene."). As well, Carr must plead facts to show a causal connection. *Crawford*, 15 F.4th at 761-62.

Carr's pleading fails to state a claim against either Hellinger or Pitcock. Carr argues that "Defendant Hellinger participated in Plaintiff's interrogation, yet never stopped Defendant Finch's threats to put Plaintiff – a teenage girl – in jail for life or his crude and demeaning threats toward her." *Id.* (citing Compl. at ¶¶ 161-64). But, as set out above, Carr does not allege that any constitutional harm resulted. Instead, despite Finch's techniques, Carr maintained her innocence. Complaint, DN 01, at ¶ 164.

Carr argues that Pitcock "failed to intervene in the investigation despite Defendant Finch's disturbing criminal conduct involving abuse of law enforcement power." Response, DN 42 at 7 (citing Compl. at ¶¶ 195-209). However, as explained above, Finch's alleged "abuse of law enforcement power" occurred after the Adolphe murder investigation and after Carr took an *Alford* plea. Pitcock cannot plausibly be charged with failing to intervene based on conduct by Finch that had not yet occurred. Lastly, Carr relies on her contention that "Pitcock authorized Defendant Finch's surveillance and subsequent arrest of Carla Sowers (resulting in her fabricated statement)." Response, DN 42, at 7. But the Complaint does not allege Pitcock coerced a false statement from

8

Sowers or even knew that Finch had done so. Thus, there are no fact allegations which establish conduct by Pitcock that caused constitutional harm.

In short, absent further factual enhancement, Carr's failure-to-intervene allegations "stop short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 546.

**C. Conspiracy**

Carr's conspiracy claims must also be dismissed for failure to state a claim upon which relief may be granted. Carr contends that her allegations state "a plausible claim that Defendants had at least a tacit agreement to participate in the common plan to unlawfully convict [her] of Mr. Adolphe's homicide." Response, DN 42, at 9. To support this contention, Carr relies on allegations that are legal conclusions couched as factual assertions, allegations that do not mention Hellinger or Pitcock, and allegations that do not speak to the elements necessary to a conspiracy clam. As such, these allegations do not suffice.

First, Carr relies on paragraph 258 of her Complaint. *Id.* at 8. That paragraph states:

> After Mr. Adolphe was murdered, the Defendant Officers reached an agreement amongst themselves to frame Ms. Carr for the crimes, and to thereby deprive Ms. Carr of her constitutional rights and his [sic] liberty to be continuously taken away from her, all as described in the various Paragraphs of this Complaint.

Complaint, DN 01, at ¶ 258. This paragraph couches the agreement element of a conspiracy claim as a fact allegation. This Court need not accept legal conclusions as true and declines to do so. *Papasan*, 478 U.S. at 286; *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) (legal conclusions "'masquerading as factual allegations'" do not suffice) (citation omitted). There are no specific fact allegations of a plan or agreed upon scheme to violate Carr's constitutional rights.

Next, Carr points to paragraphs 55-77 of the Complaint. These allegations say nothing about either Hellinger or Pitcock, however. They are about defendant Finch and his alleged failure

9

to further investigate Louis despite having strong evidence against him. Carr also relies on Paragraphs 125-135, but those paragraphs are about defendant Lawson. Carr cites paragraphs 136-149, but those allegations concern Finch or make blanket allegations as to what the "Defendants" did not learn but should have learned during the Adolphe investigation. None of those paragraphs allege that Hellinger and/or Pitcock entered into an agreement or formed a single plan to frame Carr. Thus, Carr has not plausibly stated a conspiracy claim based on these allegations.

Carr also relies on Pitcock's alleged approval to survey Sowers but that allegation likewise fails to allege an agreement to frame Carr. Finally, Carr echoes her assertion that Hellinger and Pitcock permitted Finch to investigate "despite knowledge that he was criminally abusing his status as an LMPD officer." Response, DN 42, at 9. Again, the abuse-of-office conduct postdates Carr's *Alford* plea, making it implausible that these facts somehow allege a plan to frame Carr.

### D. Request to Amend

Carr requests leave to amend her Complaint should the Court grants Defendants' Motion. Carr has not filed a formal motion, however. Also, Carr has not identified the nature of any proposed amendments. Thus, Defendants have not had the opportunity to respond and the Court is unable to analyze the request under the applicable standards. For these reasons, the Court will deny the request at this juncture. However, compliant with any scheduling order, Carr may file a properly supported motion for leave to amend.

## CONCLUSION

Carr has agreed that her claims against defendant Seabolt should be dismissed. By limiting her Response to arguments about her § 1983 claims for supervisor liability, failure-to-intervene, and conspiracy, Carr has also conceded that all of her other claims against Hellinger and Pitcock should be dismissed. Finally, for the reasons set forth above, Carr has failed to sufficiently plead

claims for supervisor liability, failure-to-intervene, and conspiracy against either Hellinger or Pitcock. Accordingly, Defendants' Motion for a Judgment on the Pleadings, **DN 41**, is hereby **GRANTED**. All claims against defendants James Hellinger, Troy Pitcock, and Shawn Seabolt are hereby **DISMISSED** without prejudice. Plaintiff Carr's informal request for leave to amend is **DENIED**.

    **IT IS SO ORDERED**.

March 25, 2024

Charles R. Simpson III, Senior Judge
United States District Court